# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>ETG FIRE, LLC<br>EIN: 47-1808724,<br><br>Debtor. | Case No. 24-13446-TBM<br><br>Chapter 11<br>(Subchapter V) |
| In re:<br><br>ETG FIRE MIDCO, LLC<br>EIN: 87-3949631,<br><br>Debtor. | Case No. 24-13447-TBM<br><br>Chapter 11<br>(Subchapter V)<br><br>(Jointly Administered in<br>Case No. 24-13446-TBM) |
| MARMIC FIRE & SAFETY CO., INC. and APS FIRECO LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ETG FIRE, LLC,<br><br>Defendant. | Adversary Proceeding No. 24-01225-TBM |

### DEFENDANT'S MOTION TO DISMISS ADVERSARY PROCEEDING

ETG Fire, LLC ("ETG Fire" or "Debtor")[1], a debtor and debtor-in-possession, hereby submits this Motion to Dismiss Adversary Proceeding (the "Motion to Dismiss") in response to Marmic Fire & Safety Co., Inc.'s ("Marmic") and APS FireCo LLC's ("APS" and collectively with Marmic, the "Plaintiffs") Complaint to Determine Dischargeability of a Debt Pursuant to 11 U.S.C. § 523 (Docket No. 1) (the "Complaint"), and in support, states as follows:

---

[1] Pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, ETG Fire consents to entry of final orders and judgments by the Court at this time.

## INTRODUCTION

ETG Fire moves to dismiss the Complaint for two reasons: (1) Plaintiffs fail to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012 and (2) Plaintiffs seek to improperly circumvent the proof of claim resolution process in the bankruptcy case.

Specifically, Plaintiffs seek to have their alleged debt declared nondischargeable under 11 U.S.C. § 523(a)(6). Section 523(a), by its express terms, applies only to individuals, and ETG Fire is a corporate entity. Further, even if the Court were to determine there could be circumstances where a debt against a corporate debtor—like ETG Fire—is not dischargeable under the Subchapter V discharge provisions, Plaintiffs have not alleged and cannot allege facts sufficient to make out a claim under section 523(a)(6) against the Debtor. Because the Debtor is a corporate entity that can only act through others, any liability for alleged willful or malicious acts would necessarily be imputed to the Debtor under theories of secondary/imputed liability. Under well-settled law, section 523(a)(6) nondischargeability cannot be predicated upon secondary or vicarious liability. Accordingly, the nondischargeability claim must fail.

Finally, Marmic filed a proof of claim that is currently subject to a claim objection and pending dispute. Plaintiffs cannot circumvent the claims resolution process by bringing this adversary proceeding. Accordingly, the Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

1.      On June 20, 2024 (the "<u>Petition Date</u>"), ETG Fire filed a voluntary petition for relief under subchapter V, Chapter 11 of title 11 of the United States Code. The Debtor remains a debtor in possession and is in operation of the business pursuant to 11 U.S.C. §§ 1107, 1108 and 1182.

2. On July 19, 2024, Plaintiffs filed the Motion of Marmic Fire & Safety Co., Inc. and APS FireCo LLC for Order Granting Relief from Stay [Applicable to ETG Fire, LLC] (Docket No. 98) (the "Stay Relief Motion") seeking stay relief to continue to litigate the Prepetition Litigation (as defined in the Stay Relief Motion) in Oklahoma and Missouri. The Court denied the Stay Relief Motion on October 28, 2024. *See* Docket No. 241.

3. On August 29, 2024, Marmic filed the Proof of Claim (Claim No. 44-1) (the "Claim"), asserting a claim of "not less than $5,447,788.36." *See* Claim at 2.

4. On September 18, 2024, ETG Fire and ETG Fire Midco, LLC filed the Debtor's Joint Subchapter V Plan of Reorganization Dated September 18, 2024 (Docket No. 197). The Debtor filed a First Amended Joint Subchapter V Plan of Reorganization dated October 30, 2024 (Docket No. 244) (the "Plan").

5. APS and Marmic submitted a ballot voting against the Plan in an amount of $5,447,788.36. *See* Docket No. 252.

6. On October 23, 2023, ETG Fire filed Debtor's Objection to Claim 44 Filed Against ETG Fire, LLC (the "Claim Objection"). The Claim Objection is still pending.

7. APS and Marmic filed a Motion for Temporary Allowance of Claim for Voting Purposes Pursuant to Fed. R. Bankr. P. 3018 on October 24, 2024 ("Motion for Temporary Allowance"). Debtor objected. The Motion for Temporary Allowance is still pending.

8. ETG Fire and ETG Fire Midco, LLC filed a Conditional Request to Confirm Debtors' Joint Subchapter V Plan of Reorganization Dated October 30, 2024 Pursuant to Bankruptcy Code Section 1191(b) (Docket No. 254) (the "Conditional Request").

**STANDARD OF REVIEW**

Debtor seeks dismissal of the Complaint under Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012, because Plaintiffs have failed to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain sufficient factual allegations, accepted as true, to state a claim to relief that is plausible on its face. *In re Ghaemi*, 492 B.R. 321, 324 (Bankr. D. Colo. 2013). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A motion to dismiss pursuant to Fed. R. Bankr. P. 12(6) "may be granted either because a legal remedy based on the alleged facts does not exist or because the facts as alleged, even if true, do not satisfy the legal requirements of the pleaded cause of action." *In re Rosetti*, 2007 WL 2669265 (Bankr. N.D. Tex. September 6, 2007).

In resolving a motion to dismiss, the Court may consider the pleadings, documents incorporated into the complaint by reference, and matters of which the court may take judicial notice. *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1291 (D. Colo. 2013) (citations omitted), *aff'd*, 776 F.3d 1103 (10th Cir. 2015). Debtor requests the Court take judicial notice of the pleadings and documents set forth in paragraphs 1–8 above, as well as the fact that certain claims have been asserted in the prepetition litigation (but not the truth of the allegations), as set forth in Part II below.

Debtor also seeks dismissal of the Complaint because it is in direct contravention of the carefully crafted process established by Fed. R. Bankr. P. 3003 and Fed. R. Bankr. P. 3007 as the proper mechanism for addressing the validity and extent of claims within chapter 11 cases. *See In*

4

re McCarther-Morgan, No. Adv. 07-90654, 2009 WL 7810817, at *4 (B.A.P. 9th Cir. Jan. 27, 2009).

**ARGUMENT**

**I.      Section 523(a) is Not Applicable To the Debtor.**

Plaintiffs allege Count XI as an "objection to discharge under 11 U.S.C. § 523(a)(6)," but it is clear that an action under section 523(a) of the Bankruptcy Code only exempts from discharge debts against individual debtors and not corporate debtors. By its express terms, section 523(a) states: "(a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an **individual** debtor from any debt— . . ." 11 U.S.C. § 523(a) (emphasis added). A limited liability company is not an "individual" as contemplated by section 523(a). Although the word "individual" is not defined, the language of the Bankruptcy Code is clear that Congress distinguished between individuals and corporate entities. Bankruptcy Code section 109(a) authorizes a "person" to be a debtor in bankruptcy, and section 101(41) defines a "person" to include an "individual, partnership, and corporation." See 11 U.S.C. §109(a); 11 U.S.C. §101(41). Courts have recognized, from the separate enumeration of individual and corporation in section 101(41), the Bankruptcy Code intentionally distinguished between individuals and corporate entities. See, e.g., In re Pelkowski, 990 F.2d 737, 742 (3d Cir. 1993) ("We believe it is evident that 'individual' debtor is used in contradistinction to 'corporate' debtor.").

To the extent that Plaintiffs are attempting to capitalize on decisions from other circuits holding that section 1192 of the Bankruptcy Code leaves open the possibility that a court could find that debts "of the kind specified in section 523(a)" are not covered by the section 1192 discharge provision as it applies to a corporate subchapter V debtor, this is not pled in Plaintiffs' complaint. In fact, there is not a single mention of section 1192 in the Complaint. Instead, the

5

Complaint asserts only a cause of action under section 523(a)(6). "It is almost undebatable and universally held that a corporate Chapter 11 debtor is not subject to the dischargeability provisions of 11 U.S.C.A. § 523." *In re Push & Pull Enter., Inc.*, 84 B.R. 546, 548 (N.D. Ind. 1988). *See also Yamaha Motor Corp. v. Shadco, Inc.*, 762 F.2d 668, 670 (8th Cir. 1985) (*citing In re Kuempel Co.*, 14 B.R. 324, 325 (Bankr. S. D. Ohio 1981)); *In re Spring Valley Farms, Inc.*, 863 F.2d 832, 834 (11th Cir. 1989) ("A corporate debtor is not an individual debtor for the purposes of Section 523."); *Garrie v. James L. Gray, Inc.*, 912 F.2d 808, 812 (5th Cir.1990) ("[T]he 'willful and malicious injury' exception to discharge, like all of the exceptions to discharge found in section 523(a), applies only to individual, not corporate, debtors.").

Nevertheless, to the extent the Court is willing to read the Complaint to imply an objection to discharge under section 1192 for the "kind of debt" set forth in section 523(a)(6), ETG Fire still asserts that there is ample case law and good reason to find that an objection to discharge under sections 1192 and 523(a)(6) is still only applicable to individual Subchapter V debtors.

In 2019, Congress passed the Small Business Reorganization Act of 2019 creating a new chapter 11 bankruptcy known as Subchapter V codified at 11 U.S.C. § 1181 et seq. The intent of Congress in enacting Subchapter V was, among other purposes, to "streamline the bankruptcy process by which small business debtors reorganize and rehabilitate their financial affairs." *Gaske v. Satellite Rests. Inc. (In re Satellite Rests. Inc.)*, 626 B.R. 871, 876 (Bankr. D. Md. 2021) (quotations omitted). Subchapter V is available to both corporations and individuals, so long as they meet the qualification requirements to be a Subchapter V debtor.

There are two statutes that control the discharge of debts for a corporate Subchapter V debtor: section 1141(d) and 1192 of the Bankruptcy Code. If the plan is consensual, section 1141(d) governs. If the plan is nonconsensual and thus confirmed under section 1191(b), then section 1192

6

governs. Section 1192 of the Bankruptcy Code provides that if the plan is non-consensual, "the court shall grant the debtor a discharge of all debts . . . except any debt . . . of the kind specified in section 523(a) of this title." 11 U.S.C. § 1192(2).

As an initial matter, it is not clear whether the Plan will be confirmed under sections 1191(a) or 1191(b). As set forth in the Conditional Request, it is uncertain whether Class 4 has accepted the Plan. (Conditional Request, ¶ 2.) An alleged $9,457,756.39 in claims in Class 4 voted to reject the Plan. (*Id.*) However, this amount includes disputed and duplicative claims, including Plaintiff Marmic's claim. The Claim is subject to the pending Claim Objection and has not been temporarily allowed as of the date of this Motion to Dismiss. To the extent the Plan is confirmed under section 1141(d), there is no question that the limitation of discharge of debts under section 523 only applies to individuals (with an exception found in section 1141(d)(6) that is not applicable here). *See In re Palmer Drives Controls and Systems, Inc.*, 657 B.R. 650, 655 (2024) (Bankr. Colo. 2024).

The same result should be reached if the Plan is confirmed under section 1191(b), even if the statutory language is not as explicit as in section 1141(d). The plain language of sections 523(a) and 1192, the history of corporate discharge, and the overall statutory scheme of Chapter 11 of the Bankruptcy Code all support a determination that section 1192's reference to section 523(a) does not expand its applicability to corporate debtors. *See In re Off-Spec Sols., LLC*, 651 B.R. 862, 864 (B.A.P. 9th Cir. 2023), *appeal dismissed*, No. 23-60034, 2023 WL 9291577 (9th Cir. Nov. 2, 2023); *In re Rtech Fabrications, LLC*, 635 B.R. 559, 566 (Bankr. D. Idaho 2021).

The Ninth Circuit Bankruptcy Appellate Panel in *In re Off-Spec Solutions, LLC* conducted a plain language analysis of the statute's language, stating that "[s]ection 523(a) unambiguously applies only to individual debtors." 651 B.R. at 867. Section 1192(2) created no ambiguity when viewed in the light that "§ 1192 reiterates § 523(a)'s application to debtors under subchapter V,

7

and § 523(a) limits its applicability to individuals." *Id.* Ambiguity is instead created when trying to read section 1192(2) as obviating "the express limitation in the preamble of § 523(a) or otherwise expand[ing] its scope to corporate debtors." *Id.*

The Ninth Circuit Bankruptcy Appellate Panel further reasoned that if section 1192(2) was to change the operation of section 1141, then there was no need to add a reference to section 1192 to the preamble of section 523(a). The existing reference to section 1141 would have sufficed. *Id.* Further, the court reasoned that the addition of section 1192 to section 523(a)'s preamble would be nonsensical. An alternative reading (such as was done by the Fourth Circuit in *Cantwell-Cleary Co., Inc. v. Cleary Packaging, LLC (In re Cleary Packaging, LLC)*, 36 F.4th 509, 515 (4th Cir. 2022)) would render the addition to section 523(a) meaningless, which in turn would violate the statutory canon against surplusage. *Id.* at 867–68.

The Panel also disagreed with the Fourth Circuit's projection of Congress's intent. *Id.* at 872. Rather than attempt to substitute a separate, projected rationale, the Panel questioned the Fourth Circuit's conclusion that the application of section 523 to Subchapter V corporate debtors was a true quid pro quo for the elimination of the absolute priority rule. *Id.* The Panel was further concerned that rendering certain debts nondischargeable is more likely to harm most general unsecured creditors by steering small businesses with nondischargeable debts toward liquidation. *Id.* And further, "[c]onstruing § 1192 to make debts nondischargeable for corporate debtors offers little benefit to unsecured creditors in small business cases and poses serious obstacles to the stated purpose of the SBRA to make reorganization efficient and expeditious for small business debtors." *Id.* at 873.

The opinion of the Ninth Circuit Bankruptcy Appellate Panel is well-reasoned, persuasive, and reaches the right result under the law. Had this opinion been published prior to the United

8

States District Court for the District of Colorado's ruling in *Synergetic Oil Tools, Inc. v. Revelant Holdings LLC (In re Revelant Holdings LLC)*, it is very likely that the District Court would have instructed the United States Bankruptcy Court to take this ruling into consideration when issuing its opinion on remand. *See* Civil Action 1:21-cv-00213-CNS (D. Colo. Mar. 28, 2023). Since the opinion in *In re Off-Spec Solutions, LLC*, courts have reached different conclusions, but the Tenth Circuit has never ruled definitively on the issue. A notable commentator, Judge Paul Bonapfel has also written articles critiquing the Fourth Circuit's opinion in Cleary Packaging. *See* Judge Paul W. Bonapfel, *Do § 523(a) Exceptions to Discharge Apply to The Discharge of a Corporation in a Subchapter V Case After "Cramdown" Confirmation Under § 1191(b)?*, 32 No. 4 J. BANKR. L. & PRAC. NL ART. 1. *See also* Hon. Paul W. Bonapfel, Guide to the Small Business Reorganization Act of 2019, revised June 2022, pp. 237–238, *available at* https://www.ganb.uscourts.gov/sites/default/files/sbra_guide_pwb.pdf. (noting "the better conclusion is that Congress did not intend that the exceptions to discharge in § 523(a) apply to the discharge of an entity under § 1192").

Finally, it is worth noting that not all debts "of the kind" specified in section 523(a) can even be applicable to corporate debtors. Corporate debtors do not pay domestic support obligations. *See* 11 U.S.C. § 523(a)(5). Corporations cannot use alcohol, drugs or other substances. *See* 11 U.S.C. § 523(a)(9). Corporations do not have dependents and take out student loans. *See* 11 U.S.C. § 523(a)(8). In fact, the plain language of section 523(a)(6) specifically refers to "the debtor" in the preamble of section 523(a), which is limited to "an individual debtor":

> (a) A discharge under section 727, 1141, 1192 [1] 1228(a), 1228(b), or 1328(b) of this title does not discharge **an individual debtor** from any debt— . . . (6) for willful and malicious injury by **the debtor** to another entity or to the property of another entity;

11 U.S.C. § 523(a)(6). Here, the reference to "the debtor" is to "an individual debtor" seeking a discharge under the enumerated discharge provisions. It is logical that section 1192 would refer to section 523(a) for instances when an individual Subchapter V debtor is seeking a discharge. It does not make sense for Congress to generally refer to section 523(a) for corporate debtors when so many of the kinds of debt in section 523(a) cannot even be applicable to non-individual debtors.

For all of the reasons set forth by the Ninth Circuit Bankruptcy Appellate Panel and those additional reasons set forth herein, the Complaint should be dismissed because section 523(a) is not applicable to find that debts of individual debtors cannot be discharged under section 1192.

## II. Even if Section 523(a) Could be Applicable to the Debtor, Plaintiffs Fail to State a Claim Under Section 523(a)(6) Against the Debtor.

Even if the Court decides to adopt a position that section 523(a) can apply to ETG Fire, Plaintiffs still fail to plead a claim under section 523(a)(6) of the Bankruptcy Code because Plaintiffs have failed to establish a plausible theory as to how ETG Fire can act willfully and maliciously to injure Plaintiffs.

As an initial matter, Plaintiffs have the burden of proving, by a preponderance of the evidence, that ETG Fire's alleged unliquidated and disputed debt is excepted from discharge pursuant to 11 U.S.C. § 523. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S. Ct. 654, 659, 112 L. Ed. 2d 755 (1991). Consistent with the "primary purposes of the Bankruptcy Act" to provide debtors with a "fresh start[,]" exceptions to discharge are "strictly construed against an objecting creditor and in favor of the debtor's right to discharge." *Matter of Vickers*, 577 F.2d 683, 687 (10th Cir. 1978); *Groetken v. Davis (In re Davis)*, 246 B. R. 646, 652 (BAP 10th Cir. 2000), *aff'd in part and rev'd in part on other grounds*, 35 Fed. Appx. 826 (10th Cir. 2002) (unpublished).

Under section 523(a)(6), debts for "willful and malicious" injuries caused "by the debtor to another entity" may be excepted from discharge. In the seminal case *Kawaauhau v. Geiger*, the

10

United States Supreme Court made clear that section 523(a)(6) only applies to intentional and malicious torts, and not injuries caused by recklessness or negligence. 523 U.S. 57, 64 118 S. Ct. 974 (1998). The Court further explained that only acts done by the debtor "with the actual intent to cause injury fall within the exception's scope. *Id.* at 978. The Court explained that because the words "willful and malicious" modify the word "injury," nondischargeability is only available where there is evidence that the debtor intentionally and maliciously caused the alleged injury, not merely an intentional "act that leads to injury." *Id.*

The Tenth Circuit highlighted these principles in *Panalis v. Moore (In re Moore)*, and distinguished section 523(a)(6) from general tort liability principles. 357 F.3d 1125 (10th Cir. 2004). Specifically, under "basic tort law" a person may be liable for the consequences of an intentional tort, regardless of whether that person actually intended those consequences. *Id.* But theories of liability have no bearing on dischargeability under section 523(a)(6). Instead, the inquiry must be focused on whether the debtor intended "the consequences of an act,' not simply 'the act itself.'" *Id.* (*quoting Geiger*, 118 S. Ct. 974). Further, the Tenth Circuit emphasized the importance of finding both a "willful act and malicious injury." *Id.* To constitute a "malicious injury" there must be "evidence of the debtor's motives." *In re Bloom*, No. 22-1005, 2022 WL 2679049, at *7 (10th Cir. July 12, 2022) (quoting *In re Smith*, 618 B.R. 901, 919 (B.A.P. 10th Cir. 2020). "To be malicious, the debtor must have acted with a culpable state of mind vis-à-vis the actual injury caused the creditor" and "that the action be wrongful and without just cause or excuse." *Id.* (cleaned up).

Therefore, to prevail on its section 523(a)(6) claim, Plaintiffs must prove: "(1) an intentional action by the defendant; (2) done with the intent to harm; (3) which causes damage (economic or physical) to the plaintiff; and (4) the injury is the proximate result of the action by

11

the defendant." *In re Nigam*, No. AP 14-1574, 2018 WL 3768990, at *5 (10th Cir. BAP (Colo.) Aug. 9, 2018), *aff'd*, 780 F. App'x 559 (10th Cir. 2019) (quotations omitted).

With these principles in place, it is well-settled that secondary theories of liability such as vicarious liability, respondeat superior, or imputed liability are not sufficient to show "intentional and malicious" acts by the debtor. *See In re Smith*, No. 10-27260 HRT, 2012 WL 425196, at *7 (Bankr. Colo. Feb. 9, 2012) (collecting cases). "Merely proving that the [debtor] could be held liable to the same degree as [co-defendants] under a state law vicarious liability theory such as aiding and abetting . . . is insufficient to hold her liable under § 523(a)(6)." *Id.* This is because "[t]he language of the statute . . . requires 'injury by the debtor.'" *In re Sharp*, No. 22-30854, 2024 WL 2819674, at *7 (Bankr. N.D. Ohio June 3, 2024) (quoting 11 U.S.C. § 523(a)(6)). Thus, "[t]here is consensus that the injury must be by the debtor and that, absent certain circumstances, the conduct of others cannot be imputed to the debtor for purposes of § 523(a)(6)." As the Tenth Circuit has instructed, "application of vicarious liability would effectively vitiate the § 523(a)(6) requirement that only debts resulting from willful acts committed *by the debtor* be nondischargeable." *In re Nigam*, 2018 WL 3768990, at *10 (emphasis original).

Indeed, courts in this Circuit and beyond have unanimously held that secondary theories of liability are insufficient to establish non-dischargeability under section 523(a)(6). *See In re Brooks*, No. 21-10342-7, 2021 WL 3484655, at *4 (Bankr. D. Kan. Aug. 6, 2021) ("But civil tort liability for assault based on vicarious liability in state court is vastly different than a nondischargeability action under § 523(a)(6) in bankruptcy court. There is a long line of cases concluding imputed liability is not actionable under § 523(a)(6)."); *Armstrong v. Oslin (In re Oslin)*, 584 B.R. 363, 374 (Bankr. N.D. Okla. 2018) ("Notwithstanding that under applicable tort law [the debtor] may be held liable for the acts of her employees, the employee's act of serving liquor to the minor cannot

12

be imputed to [the debtor] for the purpose of Section 523(a)(6)"); *First New Mexico Bank v. Bruton (In re Bruton)*, No. 7-09-13458 JA, 2010 WL 2737201, at *8 (Bankr. D.N.M. July 12, 2010) ("This Court agrees that non-dischargeability of a debt under 11 U.S.C. § 523(a)(6) cannot, as a matter of law, be based on imputed or vicarious liability of the debtor for acts committed by someone else."); *Matter of Miller*, 196 B.R. 334, 336–37 (Bankr. E.D. La. 1996) (under section 523(a)(6), "[i]mputed liability is insufficient."); *In re Tomasek*, 175 F. App'x 662, 668 (5th Cir. 2006); *In re Sintobin*, 253 B.R. 826, 830–31 (Bankr. N.D. Ohio 2000) (collecting cases) ("As a result of this requirement, it has been universally held that a person's willful and malicious actions cannot be imputed to another person for the purpose of holding that debt nondischargeable under § 523(a)(6)."); *In re Galan*, 455 B.R. 214, 222–23 (Bankr. D. Idaho 2011) ("A creditor's debt can not be excepted from discharge based solely on the debtor's vicarious liability for acts that were committed other than by the debtor.") (cleaned up); *In Columbia Farms Distrib., Inc. v. Maltais (In re Maltais)*, 202 B.R. 807 (Bankr.D.Mass.1996); *In re Placeres*, 578 B.R. 505, 516–17 (Bankr. S.D.N.Y. 2017) ("Section 523(a)(6) requires a willful and malicious injury by the debtor, and it is well-settled that willfulness cannot be based on the imputation of another person's actions or intent."); *In re Nolan*, 220 B.R. 727, 731–32 (Bankr. D.D.C. 1998) (debtor not subject to nondischargeability under section 523(a)(6) based on malicious acts of its employee); *Matter of Gurbacki*, No. AP 21-8001, 2021 WL 1216542, at *4–5 (Bankr. D. Neb. Mar. 30, 2021) (state court judgment against debtor on basis of "alter ego theory . . . does not bring the debt within 11 U.S.C. § 523(a)(6)."); *In re Bruce*, 593 B.R. 765, 777 (Bankr. S.D. Ohio 2018) (collecting cases) ("Consequently, the willful and malicious conduct of others, even if the debtor may be legally responsible for that conduct under state law, cannot be imputed to the debtor for purposes of Section 523(a)(6)."); *In re Hughley*, No. 17-41946, 2019 WL 2402852, at *5 (Bankr. N.D. Ohio

June 5, 2019) ("[J]ust because the debtor may be jointly and severally liable to the creditor under state law for any damage to the rental property does not make the damage caused by the willful and malicious conduct of Lawrence Holden or any other individuals a nondischargeable debt of the debtor.").

These principles further demonstrate the reasoning explained above that section 523(a)(6) dischargeability is not applicable to corporate debtors, as liability upon a corporate entity is by necessity a secondary theory of liability based on the conduct of its agents. *See, e.g., Mortg. Invs. Corp. v. Battle Mountain Corp.*, 70 P.3d 1176, 1182 (Colo. 2003), *as modified on denial of reh'g* (June 9, 2003); *Colorado Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 29 (Colo. App. 2010), *as modified on denial of reh'g* (Apr. 1, 2010); *Dolin v. Contemp. Fin. Sols., Inc.*, 622 F. Supp. 2d 1077, 1089 (D. Colo. 2009). Moreover, in a corporate context, the agents whose conduct may be imputed to the Debtor may be long gone. Ownership may have completely changed. Indeed, the body of creditors who would be negatively impacted by inability to address a different date may be entirely different than when the underlying acts are alleged to occur. Application of section 523(a)(6) to a corporate entity could result in arbitrary and destructive outcomes contrary to the purposes of either section 523(a)(6) or of Chapter 11 itself.

Here, all theories of liability against Debtor are based upon secondary theories of liability premised on the alleged misconduct of Debtor's employees and agents being imputed to Debtor. Generally, Plaintiffs allege a "brazen scheme" orchestrated by former Marmic/APS and former ETG employees and agents. (Compl., p. 1–3.) Plaintiffs allege that as officers, employees, or agents of ETG, each of these individual's acts "were imputed to ETG." (Compl., ¶ 84.) (*See also* (Compl. ¶ 89) ("Thereafter, at the direction of Holmes, *acting as employee and agent* of ETG") (emphasis added); (Compl. ¶ 140) ("By and through the *acts of ETG's employees . . .*") (emphasis

14

added); (Compl., ¶ 182) ("Defendant ETG (*through its employees*) . . ."); (emphasis added); (Compl., ¶ 183) ("Defendant ETG (*through its employees*) . . .") (emphasis added); (Compl., ¶ 185) ("Defendant ETG (*through its employees*) . . . ) (emphasis added); (Compl., ¶ 212) ("ETG, acting *through its agents* . . . ") (emphasis added); (Compl., ¶ 213) ("ETG's actions, *through its agents*, to compete unfairly with Plaintiffs and solicit Plaintiffs' customers were deliberate, intentional, and premeditated to inflict harm on the Plaintiffs' business.") (emphasis added).)

Based upon this alleged scheme by Debtor's former employees and agents, Plaintiffs bring ten causes of action attempting to hold Debtor secondarily liable for the alleged misconduct of its former employees. (Compl., Counts I–X.) Indeed, these are the exact same causes of action Plaintiffs are currently pursuing directly against these employees in Oklahoma and Missouri state and federal court, respectively.

Specifically, all claims brought in this Adversary Proceeding against ETG are duplicative of the claims asserted in the pre-petition litigation against the individual defendants. *Compare* (Compl., Counts I – IX) *with* (First Am. Pet., *Marmic Fire & Safety Co., Inc. et al. v. Aebersold, et al.*, Case No. 3:23-cv-05061, (W.D. Mo. Sept. 5, 2023), Counts I–XI) *and* (Second Am. Pet., *Marmic Fire & Safety Co., Inc. v. Holmes, et al.*, Case No. 2023-03083 (Dist. Ct. Tulsa Cty., Okla.), Counts I–IX). This confirms that Plaintiffs are seeking to recover for the same alleged misconduct by Debtor's agents and employees through different theories of liability: in the pre-petition litigation, Plaintiffs pursue theories of primary liability against the individuals for the alleged torts and breaches of contract they allegedly committed; and in this Adversary Proceeding, Plaintiffs seek secondary theories of liability against ETG Fire for those same acts. Because the Complaint only seeks recovery against ETG Fire for imputed acts by non-parties, section 503(a)(6) non-dischargeability is unavailable.

15

Further, because all of Plaintiffs' claims against Debtor are based upon imputed liability, Plaintiffs would not be able to recover anything from Debtor to the extent Plaintiffs succeed against the individual defendants in the pre-petition litigation on a theory of primary liability. *See In re Swing House Rehearsal & Recording, Inc.*, No. 2:16-BK-24758-RK, 2022 WL 4242259, at *36 (Bankr. C.D. Cal. Sept. 14, 2022), *aff'd sub nom. In re Swing House Rehearsal & Recording, Inc.*, No. 2:16-BK-24760-RK, 2023 WL 3758963 (B.A.P. 9th Cir. June 1, 2023), *aff'd*, No. 23-60028, 2024 WL 1299997 (9th Cir. Mar. 27, 2024) (noting the precondition to a nondischargeability determination is an enforceable claim under state law, because Section 11.U.S.C. § 523 "does not provide for the creation of debts, but rather for determination of such existing debts as nondischargeable under certain conditions."). Of course, Plaintiffs cannot doubly recover for the same alleged damages caused by the same alleged misconduct. *See, e.g.*, *Marso v. Homeowners Realty, Inc.*, 418 P.3d 542, 544 (Colo. App. 2018), *amended on denial of reh'g* (Mar. 22, 2018) (affirming that monetary settlement with agent must be set off against jury verdict against principal where principal's liability based entirely on vicarious liability in order to avoid windfall and double recovery for same alleged harm). And, Marmic did not delineate in its Proof of Claim which damages it contends pertain to which claim, and/or whether the same damages are sought from the individuals in the pre-petition litigation. (*See* Claim.) Marmic has already settled with one of the individual defendants, Tyler Aebersold, in the pre-petition litigation (*see* Order Dismissing Aebersold with Prejudice, ECF #128, *Marmic v. Aebersold, et al.*, No. 23-cv-05061 (W.D. Mo. Sept. 4, 2024)), and simultaneously, Plaintiffs seek in this Adversary Proceeding to hold ETG Fire secondarily liable for the alleged wrongful acts by Mr. Aebersold. (*See* Adversary Compl., ¶¶ 56–98, 112–140.) In sum, Marmic's theories of liability against ETG Fire are based upon imputed acts, and recovery for such alleged damages may already have been satisfied by the individual actors.

16

Thus, it is indisputable that in this Complaint, Plaintiffs only pursue secondary theories of liability against ETG for the imputed acts of the individuals in the pre-petition litigation. Because it is well-settled that non-dischargeability under section 523(a)(6) cannot be premised on the imputed acts of third-parties, Count XI must be dismissed with prejudice.

### III. Plaintiffs Remaining Claims Are Improperly Brought in the Complaint and Must Be Dealt With in the Claims Objection Process.

As fully explained herein, Plaintiffs have no viable arguments that their claims are nondischargeable under section 523 of the Bankruptcy Code. Section 523 provides limited and specific bases for non-dischargeability, and failure to meet this standard indicates that Plaintiffs' claims are subject to discharge just like any other. Given that reality, this adversary proceeding does not seek anything beyond what Plaintiffs could obtain through the established proof of claim process.

The claims allowance and objection process is governed by Bankruptcy Rules 3003 and 3007. These rules and the carefully crafted process they establish is the proper mechanism for addressing the validity and extent of claims within chapter 11 cases. *See In re McCarther-Morgan*, No. Adv. 07-90654, 2009 WL 7810817, at *4 (B.A.P. 9th Cir. Jan. 27, 2009) ("The Bankruptcy Code and the rules promulgated thereunder specify comprehensive and detailed procedures for filing and consideration of creditors' claims and resolution of disputes over claims, which are core functions of the bankruptcy system."). Congress has established this comprehensive framework to ensure that all claims are handled uniformly, protecting both the debtor's right to a fresh start and the creditor's right to assert claims through the proper channels. In fact, this process is arguably claimant-friendly, as "[u]nder this procedure, a claimant holds a valid claim until an objector presents evidence to the contrary." *In re Klassen*, 227 B.R. 187, 190 (Bankr. D. Kan. 1998).

17

Plaintiffs' attempt to litigate their claim to judgment through the guise of a dischargeability determination bypasses the safeguards of Rules 3003 and 3007. Circumventing this process and litigating this adversary proceeding to judgment would result in an inefficient, piecemeal approach that disrupts the orderly administration of the case and could result in inconsistent rulings on similarly situated claims. Plaintiffs should respect this process, as all other claimants are doing. *See In re Pariseau*, 395 B.R. 492, 495–96 (Bankr. M.D. Fla. 2008) ("[I]t is essential that practitioners appearing before this Court respect the claims process so that significant judicial resources are not squandered on matters that can be so very easily resolved."). But instead, by forcing this adversary proceeding, Plaintiffs are attempting to dictate the claims process on their own terms, which not only seeks preferential treatment, but actively undermines the core principles of bankruptcy law, which prioritize fairness and equitable treatment of creditors. *See In re McCarther-Morgan*, 2009 WL 7810817 at *4 ("The Bankruptcy Code and the rules promulgated thereunder specify comprehensive and detailed procedures for filing and consideration of creditors' claims and resolution of disputes over claims, which are core functions of the bankruptcy system.").

In sum, if Plaintiffs are dissatisfied with the treatment of their claims, their recourse is through the claims allowance process, not through litigation that circumvents bankruptcy procedure and subjects the Debtor to unnecessary costs and threatens to derail the reorganization efforts that Chapter 11 seeks to facilitate. The Court should reject Plaintiffs' attempts to circumvent bankruptcy procedures and uphold the integrity of the claims allowance process.

WHEREFORE, the Debtor requests that the Court dismiss the Complaint with prejudice and for such further and additional relief as the Court may deem proper.

[*Remainder of page intentionally left blank.*]

DATED: November 7, 2024

        BROWNSTEIN HYATT FARBER SCHRECK, LLP

        */s/ Amalia Sax-Bolder*
        Michael J. Pankow, #21212
        Amalia Sax-Bolder, #54959
        Craig M. Finger, # 50134
        675 15th Street, Suite 2900
        Denver, CO 80202
        (303) 223-1100 (Tel.)
        (303) 223-1111(Fax)
        mpankow@bhfs.com
        asax-bolder@bhfs.com
        cfinger@bhfs.com

        *Attorneys for ETG Fire, LLC*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 7th day of November, 2024, I electronically filed the foregoing **DEFENDANT'S MOTION TO DISMISS ADVERSARY PROCEEDING** via the Court's CM/ECF filing system and notice of the filing was served in accordance with applicable Fed. R. Bankr. P. and L.B.R. on the following:

- **L. Katie Mason**  katie.mason@quarles.com, kristie.knitter@quarles.com
- **Randy J Pflum**  randy.pflum@quarles.com
- **Lucas Schneider**  lucas.schneider@stinson.com, DEN.LSSTeam@stinson.com
- **Jason Ryan Stavely**  jason.stavely@quarles.com

                                              */s/ AJ Ciabattoni*
                                              AJ Ciabattoni, Legal Practice Assistant/Paralegal